GLORIA DAVIS *v.* RICHARD DAVIS ET AL.
(AC 29188)

Flynn, C. J., and DiPentima and Dupont, Js.

Argued October 22, 2008—officially released January 13, 2009

*John T. Asselin-Connolly*, with whom, on the brief, was *Richard E. Joaquin*, for the appellant (plaintiff).

*Bart A. Sayet*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. The plaintiff, Gloria Davis, appeals from the summary judgment rendered by the trial court in favor of the defendants, Richard Davis and Julie Davis, on both causes of action in the plaintiff's two count complaint. The plaintiff claims that the court improperly (1) concluded that the mutual release provision in the marital dissolution agreement signed by the plaintiff and Richard Davis precluded a subsequent tort claim against a former spouse and a third party, (2) concluded that the defendants' conduct was not sufficiently "extreme and outrageous" to support her claim for intentional infliction of emotional distress and (3) construed "extreme and outrageous" conduct as a necessary element to her claim for negligent infliction of emotional distress. We affirm the court's judgment in favor of the defendants on the first count of the plaintiff's complaint and reverse the judgment of the court in favor of the defendants on the second count of the plaintiff's complaint.

The plaintiff commenced this action by way of a two count complaint dated March 8, 2005. In count one of the complaint, the plaintiff alleged a claim of intentional infliction of emotional distress against the defendants. In support of her claim, she set forth the following factual allegations. The plaintiff and Richard Davis married on February 2, 1983, and lived together until approximately November 20, 2002, when Richard Davis left the marital residence to live with Julie Davis, to whom he is married presently. At all times relevant,

Richard Davis was aware that the plaintiff had been in therapy, on and off since 1992, for treatment for depression. Richard Davis commenced a divorce action against the plaintiff on or about November 19, 2002, and during the course of the divorce proceedings the plaintiff learned that he had begun a sexual relationship with Julie Davis prior to the time he left the marital residence. Richard Davis knew that the plaintiff "was required to undergo and had undergone four (4) invasive surgical procedures with respect to her cervical spine, lumbar spine and both wrists" and at all relevant times knew the plaintiff was "still recuperating from the four surgeries . . . and thus was in a frail physical and emotional state." Richard Davis married Julie Davis nine days after the plaintiff and Richard Davis signed a separation agreement and judgment entered dissolving their marriage. According to a court order in the dissolution proceedings issued on or about December 23, 2002, the plaintiff was to have exclusive access and control of the marital residence until twenty days after Richard Davis satisfied certain conditions in the court order.

The plaintiff further alleged that the defendants removed property that had been awarded to the plaintiff from the marital home and that police intervention was required to secure the return of the property. The plaintiff alleged that on or about September 11, 2004, Richard Davis confronted the plaintiff in an angry and hostile manner both in person and by telephone and threatened that he would have the police evict and arrest her for not vacating the marital residence by his designated deadline. He further threatened that he would keep any of the plaintiff's personal property that remained in the marital home after that deadline, that the plaintiff would have to forfeit any funds owed to her if she failed to vacate the marital home by his deadline and that he would not pay her the funds he owed her under the divorce decree. The plaintiff asserted that through these

threats, the defendants intended to and did harass and intimidate her and that the behavior "produced in [the] [p]laintiff extreme emotional disturbance, causing [the] [p]laintiff to suffer feeling a sense of being physically ill, upset, extremely distressed and such conduct also worsened her sense of depression, despair, anxiety and intimidation, and did also cause her to contemplate committing suicide."

The plaintiff also alleged that although she informed the defendants, via her counsel, that she would be moving out of the marital residence on September 18, 2004, the defendants enlisted the plaintiff and Richard Davis' minor son on September 17, 2004, in a ruse in which the son invited the plaintiff out to dinner, knowing that the defendants would and did enter the marital residence to change the locks and hide some of the plaintiff's personal property in the basement. The plaintiff alleged that she was forced to call the state police to regain entrance to the marital residence and regain possession of her belongings and that Richard Davis returned to the marital residence on September 18, 2004, with the police in an attempt to have her removed from the home. The plaintiff further alleged that the defendants' behavior of intimidation and harassment caused her to require an emergency appointment with her therapist and also necessitated an increase in the prescribed dosage of her antidepression medication. She alleged that the defendants "intended to inflict emotional distress and/or . . . knew or should have known that emotional distress was the likely result of their conduct . . . ."

In count two, the plaintiff asserted a claim for negligent infliction of emotional distress against both defendants. The plaintiff incorporated the allegations of count one and made the following additional allegations: "[The] [d]efendants should have realized that their conduct . . . involved an unreasonable risk of

causing emotional distress and that that distress . . . might result in illness or bodily harm. . . . [The] [d]efendants should have realized that their conduct . . . in light of their knowledge of [the] [p]laintiff's fragile emotional and physical health might result in illness or bodily harm. . . . The fear and distress experienced by [the] [p]laintiff . . . was reasonable in light of the [d]efendants' conduct."

In their answer, the defendants denied the allegations of intentional and negligent infliction of emotional distress and, as a defense, alleged that the plaintiff's physical and emotional ailments were the result of her neglect and were preexisting prior to the divorce settlement.

On June 15, 2007, the defendants filed a motion for summary judgment, in which they argued that the mutual release provision in the marital separation agreement provided that neither party may bring suit against the other for claims that existed at the time of the marriage or arose out of the marriage. The defendants further argued that the plaintiff failed to demonstrate the requirements for intentional infliction of emotional distress by failing to demonstrate a material issue of fact as to the existence of sufficiently egregious behavior.

On June 18, 2007, the plaintiff filed an affidavit in which she stated that in signing the marital dissolution agreement, she did not intend to release Richard Davis from any claim for emotional distress and harassment stemming from behavior after the judgment of dissolution was rendered. The plaintiff also stated that Richard Davis was aware that she had been diagnosed with uterine cancer in 2004. The plaintiff reiterated in her affidavit that as a result of the defendants' behavior, she "suffered severe emotional distress" that required her to seek medical treatment and counseling.

On June 25, 2007, the court heard oral argument on the defendants' motion for summary judgment. On July 31, 2007, the court rendered summary judgment in favor of the defendants, stating: "The mutual release which is part of the parties' separation agreement covers disputes which arise out of the marriage and consequently the orders dissolving it. To raise the unpleasant argument over the terms of the separation agreement to a separate tort would wreak havoc on the court's ability to enforce its own orders and turn every unpleasant dissolution into a potential tort action. The conduct complained of herein, while unpleasant and upsetting, does not rise to extreme and outrageous conduct." The plaintiff subsequently filed a motion to reargue, which the court denied, and this appeal followed.

We begin with the principles that govern our review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a] defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rivers* v. *New Britain*, 288 Conn. 1, 10, 950 A.2d 1247 (2008).

I

The plaintiff first claims that the court improperly concluded that the mutual release provision in the marital dissolution agreement signed by the plaintiff and Richard Davis precluded a subsequent tort claim against a former spouse and a third party. We agree with the plaintiff.

The following additional facts are relevant to our resolution of the plaintiff's claim. The marital separation agreement, signed by the plaintiff and Richard Davis, contained the following mutual release provision: "Subject to the provisions of this [a]greement, and reserving the right to pursue any action for divorce or dissolution of the parties' marriage or any breach of this [a]greement, each party has released and by this [a]greement does for himself or herself and his or her heirs, legal representatives, executors, administrators, and assigns, release and forever discharge the other of and from all cause or causes of action, claims, rights or demands whatsoever in law or in equity, which either of the parties ever had or now has against the other, including, without limitation, all claims or rights which now exist or may hereafter arise by reason of the marriage of the parties."

"[I]t is familiar law that a marital dissolution agreement is a contract. . . . Thus, in reviewing it, we are guided by the law that the interpretation of a contract may either be a question of law or fact, depending on whether the language of the contract is clear and unambiguous. . . . When the language of the agreement is clear and unambiguous, its meaning is a question of law subject to plenary review." (Internal quotation marks omitted.) *Sutherland* v. *Sutherland*, 107 Conn. App. 1, 5, 944 A.2d 395 (2008). Moreover, such a contract "must be construed to effectuate the

intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) Id., 5–6. We conclude that the language of the separation agreement is clear and unambiguous. Accordingly, our review is plenary, and in determining the intent of the parties to the agreement, we are limited to the language of the contract and the parties' intent as expressed therein. *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 314, 948 A.2d 318 (2008).

Here, the mutual release provision in the separation agreement provides that each party release the other from "all claims or rights which now exist or may hereafter arise *by reason of the marriage of the parties.*" (Emphasis added.) The language of the agreement clearly and unambiguously limits the mutual release to any and all claims existing at the time the separation agreement was entered and to any and all additional claims arising out of the marriage. The defendants argue that the plaintiff "clearly either knew or should have reasonably known of her current claim for emotional distress at the time she executed the marital settlement agreement." They contend that the plaintiff must have known of her future claim because she had been in therapy for depression on and off since 1992 and because she had reinstituted therapy and undergone four surgical procedures, all prior to entering into the separation agreement on August 19, 2004. The plaintiff's complaint, however, alleged behavior by the defendants

beginning on or about September 11, 2004. Although the plaintiff cites her emotional and physical health issues as factors that indicate that the defendants knew or should have known that their behavior might result in the plaintiff's illness or bodily harm, it is the defendants' conduct beginning on or about September 11, 2004, that forms the bases of her claims of intentional and negligent infliction of emotional distress. The alleged behaviors occurred after the plaintiff and Richard Davis entered into the separation agreement and did not "arise by reason of the marriage of the parties." Moreover, the mutual release provision does not apply to Julie Davis, as she was not a party to the separation agreement. We therefore conclude that the court improperly concluded that the mutual release provision barred the plaintiff's claims against the defendants.

II

The plaintiff next claims that the court improperly concluded that the defendants' conduct was not sufficiently "extreme and outrageous" to support her claim for intentional infliction of emotional distress. We disagree.

To establish a claim of intentional infliction of emotional distress, the plaintiff must plead and prove the following four elements: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Tracy v. New Milford Public Schools*, 101 Conn. App. 560, 568, 922 A.2d 280, cert. denied, 284 Conn. 910, 931 A.2d 935 (2007).

"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . [I]t is the intent to cause injury that is the gravamen of the tort . . . ." (Internal quotation marks omitted.) Id., 569. As this court recently noted, "[i]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint . . . set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility, the court is not [fact-finding] but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." (Internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 847, 888 A.2d 104 (2006).

The plaintiff argues that the defendants' conduct was sufficiently extreme and outrageous by virtue of their knowledge that she was peculiarly susceptible to emotional distress. The defendants did not deny knowledge of the plaintiff's history of seeking treatment for depression, the fact that she recently had begun treatment for depression on or about January 10, 2003, or the fact that the plaintiff had four surgical procedures. Even armed with that knowledge, however, the defendants' behavior alleged by the plaintiff is not sufficiently extreme and outrageous as to give rise to a cause of action for intentional infliction of emotional distress. "Liability [for a claim for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000).

Here, the plaintiff alleged that Richard Davis made repeated angry and hostile threats that he would have the police evict her from the marital residence and that she would be forced to forfeit the funds owed to her pursuant to the separation agreement if she did not do so. The plaintiff further alleged that the defendants used her son in a ruse whereby the defendants gained access to the marital residence when she was not home and changed the locks so that she had to call the police to regain entry to the marital residence. The plaintiff alleged that these and other actions on the part of the defendants caused her to be physically ill and suffer extreme emotional distress. Although the defendants' alleged behavior no doubt was hurtful and distressing to the plaintiff, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." 1 Restatement (Second), Torts § 46, supra, comment (d). We conclude that the court properly determined that the defendants' behavior as alleged in the plaintiff's complaint was not extreme and outrageous as a matter of law.

III

Finally, the plaintiff claims that the court improperly construed "extreme and outrageous" conduct as a necessary element of her claim for negligent infliction of

emotional distress and improperly granted the defendants' motion for summary judgment on that claim. We agree with the plaintiff.

To prevail on a claim of negligent infliction of emotional distress, the plaintiff must plead and prove the following: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003). Thus, "[t]he plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) *McNamara* v. *Tournament Players Club of Connecticut, Inc.*, 270 Conn. 179, 197, 851 A.2d 1154 (2004).

In *Murphy* v. *Lord Thompson Manor, Inc.*, 105 Conn. App. 546, 553, 938 A.2d 1269, cert. denied, 286 Conn. 914, 945 A.2d 976 (2008), this court rejected the defendant's claim that the law requires a finding that its conduct was unreasonable, outrageous or egregious for the plaintiff to prevail on a claim of negligent infliction of emotional distress. This court reasoned that "[i]n [*Carrol* v. *Allstate Ins. Co.*, supra, 262 Conn. 433], the Supreme Court articulated no further requirement that the conduct in question be unreasonable, egregious or outrageous, but rather analyzed the case pursuant to the four-pronged test already cited." *Murphy* v. *Lord Thompson Manor, Inc.*, supra, 555. By contrast, the court in the present case, in granting the defendants' motion for summary judgment, stated, "[t]he conduct complained of herein, while unpleasant and upsetting, does not rise to extreme and outrageous conduct." Because extreme and outrageous conduct is not an

element of the negligent infliction of emotional distress cause of action, we agree with the plaintiff that the court improperly rendered summary judgment in favor of the defendants on the second count of the plaintiff's complaint.

Further, our review of the pleadings and affidavits indicates that there is a genuine issue of material fact as to whether the plaintiff can prevail on her claim of negligent infliction of emotional distress. The plaintiff in this case presented evidence that the defendants knew of her medical and emotional condition and that their actions caused her severe emotional distress that necessitated medical treatment. Viewing the evidence, as we must, in the light most favorable to the plaintiff, there is a genuine issue of material fact as to the defendants' liability in the present case. Accordingly, summary judgment was inappropriate on the second count.

The judgment is reversed only as to the claim of negligent infliction of emotional distress and the case is remanded for further proceedings on that claim. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.