ORANGE PALLADIUM, LLC *v.* WILLIAM READEY ET AL.
(AC 33944)

Lavine, Alvord and Sheldon, Js.

Argued November 16, 2012—officially released July 23, 2013

*Joseph L. Rini,* for the appellant (defendant Bru Café, Inc.).

*Pasquale Young,* with whom was *Stuart A. Margolis,* for the appellee (plaintiff).

LAVINE, J. This appeal concerns a commercial eviction brought by the plaintiff, Orange Palladium, LLC, against the defendant Bru Café, Inc.[1] The central issue presented is whether the defendant defaulted under an agreement, as modified, between the parties by failing to make required use and occupancy payments. The defendant argued at trial that it had no obligation to make the contested payments because the making of the payments was conditioned upon the plaintiff's submitting a plan to repair leaks in the atrium and also taking certain steps to repair the property. The plaintiff disagreed, contending that the plan it furnished to the defendant satisfied the agreement and that the defendant's duty to pay rent had been triggered.

More specifically, the defendant appeals from the judgment of possession rendered in favor of the plaintiff, pursuant to the trial court order granting the plaintiff's motion to enforce a settlement agreement and from the later denial of the defendant's application for a writ of audita querela. The defendant claims that the court improperly (1) construed (a) the settlement agreement to be unambiguous and enforceable as well as (b) the intent of the parties as reflected in the settlement agreement, (2) failed to find that the parties orally modified the defendant's payment obligations and (3) denied the defendant's application for a writ of audita querela.[2] We affirm the judgments of the trial court.

---

[1] The named defendant, William Readey, is not a party to this appeal. The plaintiff withdrew its action against Readey in March, 2010.

[2] The defendant also claims that the trial court improperly granted the plaintiff's motion to terminate stay of execution and that the trial court lacked subject matter jurisdiction over the action.

We decline to address the defendant's claim that the trial court improperly granted the plaintiff's motion to terminate stay of execution. "Practice Book § 61-14 provides that the sole remedy for review of a court's granting of a motion to terminate a stay of execution is to file a motion for review." *Lucas* v. *Deutsche Bank National Trust Co.*, 103 Conn. App. 762, 767, 931 A.2d 378, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007). Because the defendant has raised this claim in its direct appeal, we do not address it.

The following facts and procedural history provide the necessary background for resolving this appeal. In 2004, the plaintiff's predecessor in interest leased a commercial building in New Haven to the defendant's predecessor in interest for a term of ten years. In 2008, the defendant assumed all rights and responsibilities under the lease from its predecessor, and in 2009, the plaintiff acquired title to the property, succeeding to its own predecessor's position on the lease. In February, 2010, the plaintiff commenced the present eviction action, alleging nonpayment of rent. In November, 2010, the defendant filed a revised answer alleging numerous special defenses and a counterclaim.

On January 3, 2011, approximately three weeks before trial was scheduled to begin, the city of New Haven (city) health department issued a citation to Lynne Franford in her capacity as managing member of the plaintiff. The citation ordered the plaintiff to correct "water infiltration" and "sanitation" issues that existed on the premises.

On January 25, 2011, the eve of trial, the parties reached an agreement (January accord). Among other things, the agreement set a schedule by which the defendant would make monthly use and occupancy payments and that the plaintiff would undertake certain repairs

See, e.g., *Santoro* v. *Santoro*, 33 Conn. App. 839, 841, 639 A.2d 1044 (1994) (appellant cannot raise issues regarding stay of execution by way of direct appeal or amended appeal).

Further, we do not agree with the defendant that the trial court lacked subject matter jurisdiction over the action. The defendant claims that as per the terms of the lease, the plaintiff could only terminate the lease or otherwise make demands in writing sent by certified mail. The defendant maintains that therefore the plaintiff could not initiate the present summary process action as it failed to meet the requirements of General Statutes § 47a-23. Without engaging in an exhaustive examination of the faults in the defendant's argument, it is enough to note that the lease did not exclusively require notice to be sent via certified mail. The lease provided only that "it shall be sufficient" for the plaintiff to provide notice by certified mail.

to the premises to the satisfaction of city authorities. The plaintiff's counsel read the January accord into the record.[3]

The defendant tendered the use and occupancy payment for April, 2011, to the plaintiff. In early April, 2011, the defendant filed a motion for a default judgment, alleging that the plaintiff had breached the January accord by not satisfying its obligations, and the defendant requested a hearing to enforce the January accord pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993) (*Audubon*). A hearing on the defendant's motion was scheduled to be held on May 17, 2011. Instead, that day the parties agreed to modify the January accord. The document memorializing this second

---

[3] The plaintiff's counsel read the January accord into the record, stating in relevant part as follows: "[J]udgment for the [plaintiff] for nonpayment of rent and immediate possession is stipulated to, but shall not enter unless there's a default by the [defendant] and upon affidavit filed by the [plaintiff], then judgment will enter. . . .

"Use and occupancy shall be paid commencing February 1, 2011 . . . which shall continue through December 31, 2014, which is the termination date stated in the current lease. . . .

\* \* \*

"The [plaintiff] is going to repair a leak in the atrium to the satisfaction of the city of New Haven authorities. The [plaintiff] may be required to do additional repairs at the premises, and if those repairs are required . . . and . . . necessitate for . . . the [defendant] to have to replace its floor, then the cost of the replacement . . . will be paid as an offset . . . .

"The parties have agreed that if there's a dispute as to the necessity for the [plaintiff] to do these repairs . . . the parties have agreed to submit the matter to Cynthia Teixeira as an arbitrator to make a determination . . . .

\* \* \*

"[The plaintiff and its counsel are] going to be in touch with city officials regarding what they want, what their concern is about this leak in the atrium . . . ."

Counsel for the defendant added terms, stating in relevant part as follows: "[W]e would have the reformation of the lease if the full [amount] is paid on time and all the use and occupancy that's owed is also paid on time . . . ."

The parties indicated their express approval of all of the terms stated on the record.

agreement (May accord) consists of two handwritten pages in coarse penmanship, with numerous abbreviations, crossed-out words and insertions as well as shortcuts in grammar and usage.[4] The handwritten pages are

[4] The May accord consists of three sections. The first section is titled "Plan to repair." It contains four subsections stating as follows:

"[The plaintiff] will identify Atrium roof issues by having 1 or 2 roofers promptly investigate. once [recommendations] are made to, repair or replace, [the plaintiff] to advise [the defendant] and schedule work

"[The plaintiff] to devise plan for Leaks and pass the plan to [the defendant].

"Mold investigation, if mold mediation once leaks resolved. If needed additional repairs whenever [the plaintiff] wants upon a reasonable notice for leaks

"[D]isputes as to repairs first goes to Cynthia [Teixeira]. unsolved issues can go to the judge."

Section two of the May accord is titled "work." It contains five subsections stating as follows:

"Before or after hours on Thursday

"[The plaintiff's] contractor to inspect atrium, shore up compound area with patch.

"Atrium ceiling not to be opened up unless ordered or necessary, until leaks stop

"[The plaintiff] to schedule repairs or replacement from pl. promptly. If dispute, go to Cynthia [Teixeira], if not resolved, go to Judge

"If needed additional leak work [illegible] whenever [the plaintiff] decides. [The defendant] must have reasonable notice

"Molding issue to be checked and if mold [illegible] abatement after leaks resolved, unless ordered or otherwise

"If disputed Cynthia [Teixeira] to mediate. If unresolved go to Judge."

Section three of the May accord is titled "U+O Payments." It contains four subsections stating as follows:

"April U+O (2500+500) to Berdon Young + Margolis Trustee for repairs. by 5/18/11

"*May + 750 to JLR trustee to the release once plan provided.* $ to ByM trustee for repairs. If dispute, go to Cynthia [Teixeira]. If still unresolved, go To the judge.

"June + 750 + later to JLR trustee to BYM Trustee as work progresses. If dispute, go to Cynthia [Teixeira]. If still unresolved go to judge." (Emphasis added.)

The court concluded that the fourth subsection was "unintelligible." On appeal, the parties do not challenge the court's finding that this provision is unintelligible. We note that at the *Audubon* hearing, the court read the provision as follows. "Starting July U and O, after repairs, then payment to [the plaintiff] as provided in original agreement of January, 11."

accompanied by a form, signed by counsel for each party, indicating that the document modifies the January accord.[5] Among other things, the parties agreed that the plaintiff would provide a plan for repairs as a condition precedent to the release of the May use and occupancy payment and that the defendant would release the June use and occupancy payment as repair work progressed. The parties adopted a dispute settlement mechanism through which areas of disagreement were to be submitted to and resolved with the assistance of Cynthia Teixeira, who is manager of dispute resolution of the Housing Session of the Superior Court at New Haven.

On May 26, 2011, the plaintiff e-mailed the defendant a plan for repairs, although the defendant claims that the planned repairs would not have satisfied city authorities. The defendant did not tender the use and occupancy payment for May, 2011. The defendant gave its counsel a check for that purpose, but instructed counsel not to deposit the check, which precluded counsel from releasing the funds to the plaintiff. On May 31, 2011, the plaintiff filed a motion for judgment of possession, alleging that the defendant had failed to comply with the settlement agreement by failing to tender use and occupancy payments. Shortly thereafter, the defendant filed an objection to the plaintiff's motion as well as its own motion alleging that the plaintiff had failed to comply with the settlement agreement by failing to submit a suitable plan and to undertake repairs.

On July 5, 2011, the representatives of the plaintiff and the defendant met, each with counsel present, to review their respective obligations under the settlement

---

[5] In this opinion, we refer to the May modification alone as the "May accord." We refer to the settlement agreement as a whole, consisting of the January accord as modified by the May accord, as the "settlement agreement."

agreement and to discuss the possibility of an abeyance. The results of that meeting were inconclusive.

In October, 2011, the court conducted an *Audubon* hearing to determine whether the settlement agreement was enforceable and who, if anyone, had breached the settlement agreement. Each party sought to have the settlement agreement enforced pursuant to its own interpretation, and the court heard testimony from various witnesses and argument from both parties. It was undisputed at the hearing that repairs were not complete and that the roof continued to leak. The court concluded that the final sentence of the May accord was unintelligible on its face and that it was not clear and unambiguous. See footnote 4 of this opinion. In addition, the court ostensibly declined to consider any terms in the January accord in construing the meaning of terms in the May accord and refused to admit extrinsic evidence pertaining to the meaning of the final sentence.

Nonetheless, the court found the essential terms of the settlement agreement to be clear and unambiguous and concluded that the defendant had violated the "terms of the [settlement] agreement regarding payment of use and occupancy for May and June 2011" by failing to tender payment when it was due. The court concluded that there had been no dispute as to what repairs were needed because the parties had never invoked the dispute resolution mechanism by submitting any dispute to Teixeira for resolution. The court concluded that the defendant had breached the settlement agreement and rendered a judgment of possession for the plaintiff. This appeal followed. Further facts and procedural history are set forth as necessary.

I

The defendant claims that the court improperly construed the settlement agreement. Specifically, the

defendant claims that the court (a) concluded improperly that the settlement agreement was unambiguous and enforceable and (b) misconstrued the intent of the parties as reflected in the settlement agreement by ignoring provisions in the settlement agreement. We reject the defendant's claims.[6]

We review the relevant legal standards. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audubon*, supra, 225 Conn. 811. "A settlement agreement is a contract among the parties. . . . It is well settled that [w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo." (Citation omitted; internal quotation marks omitted.) *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, 114 Conn. App. 290, 294, 970 A.2d 730 (2009).

By contrast, "[i]f the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which

---

[6] We note the narrowness of our decision. We need not address whether the court properly construed the meaning of "June + 750 + later to JLR trustee to BYM Trustee as work progresses." That the defendant breached the provision relating to the May payment is sufficient to affirm the judgment of the trial court.

the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *MacDonald* v. *Pinto*, 62 Conn. App. 317, 320, 771 A.2d 156 (2001).

"If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 671, 791 A.2d 546 (2002). "Only when the terms are clear and unambiguous can the court enforce [a] settlement agreement." *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, supra, 114 Conn. App. 295. "In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . Furthermore, a presumption that the language used is definitive arises when, as in the present case, the contract at issue is between sophisticated parties and is commercial in nature. . . .

"[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . In addition, [w]hen there are multiple writings regarding the same transaction, the writings should be considered together in construing the contract." (Citations omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 670–71. "[T]he law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision

superfluous." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 14, 938 A.2d 576 (2008).

At the *Audubon* hearing, the defendant claimed that the settlement agreement should not be enforced because, during the colloquy between its counsel and the court regarding the fourth subsection of the third portion of the May modification, concerning use and occupancy payments, the court said it was "not going to reach the balance of [these] months of nonpayment because the last paragraph [concerning July and later months] is unintelligible to me." The defendant's counsel attempted to explain why certain language in that fourth subsection had to be construed in light of the January accord, which it expressly modified. The defendant's counsel specifically directed the court's attention to that portion of the fourth subsection of the use and occupancy portion of the May modification, which provided that July and later payments of use and occupancy were not to be made until repairs were completed. Such language, he argued, suggested the completion of repairs based upon the city's January citation. The court stated, however, that it would not reach the fourth subsection at all, or try to interpret it. The court focused, rather, on the clauses pertaining to May and June, and it found that the defendant violated those provisions through its nonpayment. The plaintiff's plan, it concluded, met all the descriptive requirements of the May modification, and thus the plaintiff, by submitting it, earned the right to receive the May use and occupancy payment. By performing the work that was planned, moreover, as required before the making of the June payment, the plaintiff had also earned the June payment, which was to have been paid "as work progressed."

### A

The defendant argues that the court should not have concluded that the contract was clear and unambiguous. The defendant argues that the court's conclusion that the settlement agreement is clear and unambiguous is irreconcilable with its conclusion that the final paragraph of the May accord was unintelligible, not clear and unambiguous. See footnote 4 of this opinion. We do not agree.

Because this is a contract between commercial parties, there is a presumption that the language is unambiguous. See *United Illuminating Co.* v. *Wisvest-Connecticut, LLC,* supra, 259 Conn. 670. The court found as a matter of fact that the parties did not disagree on the language because there was no evidence that anyone had sought mediation with Teixeira, as the parties had agreed to do in the event of a disagreement. See footnotes 3 and 4 of this opinion. This conclusion is supported by the record and is not clearly erroneous.

The defendant cites no law for the proposition that a single unintelligible sentence renders otherwise unambiguous portions of a settlement agreement ambiguous and unenforceable. A court is required to give each provision of a contract effect *if it is possible* to do so. See id., 671. Because a court cannot give effect to an unintelligible provision, it was not required to give effect to this provision. We conclude accordingly that the settlement agreement is unambiguous and therefore enforceable pursuant to *Audubon,* supra, 225 Conn. 804.

Moreover, the defendant ignores the fact that, in essence, the May modification established a series of obligations for each party to meet over time, and that the failure to meet any such obligation, when the time for meeting it arose, would bring about a default. Because the defendant had defaulted on its divisible

obligations to make the use and occupancy payments for May and June, the plaintiff was entitled to a judgment of possession under the January accord, regardless of whether it could later have insisted upon the performance of a later portion of the accord in July or thereafter.

B

In the alternative, the defendant claims that the court misconstrued the settlement agreement. In particular, the defendant claims that (1) the court misconstrued the meaning of "once plan provided," (2) improperly concluded that the defendant breached the provision "May + 750 to JLR trustee," and (3) failed to consider various extrinsic evidence in construing the contract. We reject the defendant's claims.

First, the defendant claims that the term "once plan provided"; see footnote 4 of this opinion; should be interpreted to mean that the plaintiff would provide a plan that was satisfactory to the city as a condition precedent to the defendant releasing the May use and occupancy payment. The May accord contains a section that details the specifics of the plan that the plaintiff agreed to provide, stating in relevant part: "[The plaintiff] will identify Atrium roof issues by having 1 or 2 roofers promptly investigate. once [recommendations] are made to, repair or replace, [the plaintiff] to advise [the defendant] and schedule work. [The plaintiff] to devise plan for Leaks and pass the plan to [the defendant]."

In the January accord, the parties provided that: "The [plaintiff] is going to repair a leak in the atrium to the satisfaction of the city of New Haven authorities." Contrary to the defendant's claims, this provision in the January accord has no bearing on the plan to be provided in the May accord. There is nothing in the language of the settlement agreement to indicate that

the "plan" in the May accord was to effectuate this provision of the January accord.

At the *Audubon* hearing, the defendant agreed that the plaintiff provided a plan and that the plan addressed leaks. As the court noted, the plain language of the settlement agreement did not specify that the plan the plaintiff agreed to provide had to be to the satisfaction of the defendant or anyone else. The plaintiff satisfied its obligation to provide a plan, yet the defendant did not satisfy its corresponding obligation to release the May use and occupancy payments.

Second, the defendant claims that the court improperly construed the provision, "May + 750 to JLR trustee." Specifically, the defendant claims that because the settlement agreement did not expressly require the funds to be deposited, it satisfied this provision by delivering a check to its attorney, Joseph L. Rini or "JLR," even though it instructed him not to deposit the check.

The defendant pulls the court's conclusion out of context. The provision in question states, "May + 750 to JLR trustee to the release once plan provided. $ to ByM [counsel for the plaintiff] trustee for repairs." The court found that the defendant breached the settlement agreement because, among other things, the defendant had not made the May, 2011 use and occupancy payment after the plaintiff submitted a plan for repairs. The defendant's legal argument is inapposite because it does not address the undisputed fact that the defendant did not satisfy its obligation to release the May use and occupancy monies to counsel for the plaintiff.

Next, the defendant claims that the court should have considered extrinsic evidence in determining the parties' intent. Specifically, the defendant claims that the court should have considered that the May accord was made immediately before a hearing on the defendant's earlier motion alleging that the plaintiff had not made

any repairs, that the January accord was made in response to a citation from city authorities, and that the plaintiff's proposed plan would not have satisfied city authorities, according to anticipated testimony from a city official. "[E]xtrinsic evidence may be considered in determining contractual intent only if a contract is ambiguous." (Internal quotation marks omitted.) *Fiallo* v. *Allstate Ins. Co.*, 138 Conn. App. 325, 341, 51 A.3d 1193 (2012). In the present case, because the settlement agreement is not ambiguous, the court properly declined to consider the extrinsic evidence. We conclude that the court properly construed the settlement agreement.

## II

In the alternative, the defendant argues that the court improperly failed to find that the parties entered into an oral agreement on July 5, 2011, to modify the defendant's payment obligations under the settlement agreement. We are not persuaded.

"Whether a contract . . . exists is a question of fact for the court to determine. . . . If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *MacDonald* v. *Pinto*, supra, 62 Conn. App. 320–21.

At the *Audubon* hearing, the defendant presented the testimony of Curtis Packer, vice president of the

defendant, about a meeting held on July 5, 2011. The defendant alleged and Packer's testimony tended to suggest that the parties agreed at the meeting to alter the defendant's payment obligations. By contrast, the plaintiff presented the testimony of Brian Franford, a member of the plaintiff who was present at the meeting. Brian Franford testified that the parties did not agree to change the defendant's payment obligations at that time. The court was not required to credit Packer's rendition of events, and it was not clearly erroneous for the court to decline to find that the parties had orally agreed on July 5, 2011, to alter the defendant's obligations under the settlement agreement.

## III

The defendant further argues that the trial court improperly denied its application for a writ of audita querela. We decline to review this claim because the precise legal basis for the writ was not distinctly raised at trial.

"[T]his court will not review issues of law that are raised for the first time on appeal. . . . We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial . . . . Claims that were not distinctly raised at trial are not reviewable on appeal." (Internal quotation marks omitted.) *Strobel* v. *Strobel*, 73 Conn. App. 488, 491, 808 A.2d 1138, cert. denied, 262 Conn. 928, 814 A.2d 383 (2002).

"A writ of audita querela is a writ issued to afford a remedy to a [tenant] against whom judgment had been rendered, but who had new matter in defense . . . arising, or at least raisable for the first time, after judgment." (Internal quotation marks omitted.) *Ruiz* v. *Gatling*, 73 Conn. App. 574, 574 n.2, 808 A.2d 710 (2002).

In its application for a writ, the defendant alleged that after the court rendered judgment, a further incursion of sewage, water, debris, mold and other damage to the property caused the city to order portions of the premises to be sealed off from the defendant. The order was contained in a second citation the city issued on August 14, 2012, to Lynne Franford in her capacity as managing member of the plaintiff.

Although the defendant based the claim in its writ on general "equitable principles," the defendant did not explain with any particularity how the postjudgment damage gave rise to a new matter in defense. See id. For the first time, on appeal the defendant claims that these alleged circumstances constituted a "constructive eviction." Because the claim was not distinctly raised at trial; see *Strobel* v. *Strobel*, supra, 73 Conn. App. 491; we decline to review it.

In summary, we conclude that the agreement was enforceable, its terms were clear, and those terms were violated when the defendant failed to make the required use and occupancy payments in May, and later, in June when all preconditions for making those payments had been satisfied. If the plan as submitted was not sufficient, it was incumbent on the defendant to seek modification through Texeira before resorting to court. This was never done.

The judgments are affirmed.

In this opinion the other judges concurred.