******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHELLE WATKINS *v.* JAMES WATKINS
(AC 35995)

Keller, Mullins and Schaller, Js.

*Argued May 21—officially released August 5, 2014*

(Appeal from Superior Court, judicial district of New
Haven at Meriden, J. Fischer, J.)

*Michael J. Fenton*, with whom, on the brief, was
*George H. Romania*, for the appellant (plaintiff).

*Eric B. Caines*, for the appellee (defendant).

*Opinion*

MULLINS, J. The plaintiff, Michelle Watkins, appeals from the summary judgment rendered by the trial court in favor of the defendant, James Watkins, on her negligence action. The plaintiff claims that the court erred in concluding that the parties' separation agreement was clear and unambiguous and therefore precluded her negligence action because, in her view, the agreement was ambiguous. The plaintiff also claims that, notwithstanding the fact that the court concluded that the separation agreement was clear and unambiguous, the court erred in declining to consider extrinsic evidence of the parties' intent, which would have shown that the plaintiff's negligence action was not precluded by the separation agreement. We disagree with the plaintiff's claims and affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiff and the defendant were married on June 12, 2004. During their marriage, on or about January 7, 2011, the plaintiff and defendant were involved in an altercation that resulted in the plaintiff sustaining serious personal injuries. Following their altercation, the parties remained married for another fourteen months, until March 14, 2012.

On March 14, 2012, two things happened. First, the plaintiff, by service of process, commenced the present negligence action against the defendant based on the January 7, 2011 incident. In her complaint, the plaintiff alleged that on January 7, 2011, her then husband, the defendant, "negligently and carelessly caused physical contact with [her] thereby causing [her] to fall to the ground inside [their] residence causing her to sustain injuries . . . ." Second, after the plaintiff had served the defendant with the negligence complaint, the parties executed a separation agreement, and the court, *Conway, J.*, dissolved their marriage. Both parties were represented by counsel in the preparation of the separation agreement and in the ultimate dissolution of their marriage.

At issue in the present appeal are two paragraphs in the parties' separation agreement. The first paragraph at issue is paragraph E under the prefatory section titled "Recital," and it provides: "REASONS FOR SEPARATION AGREEMENT: The parties wish to be legally free to live separate and apart from one another for the remainder of their natural lives. Wife and Husband desire to settle all financial and property matters between them created by their marriage by effectuating an equitable asset and liability distribution and by terminating all present and future rights and obligations, except those reserved or created hereunder, which either of them now has or hereafter may have with respect to any property or estate of the other or in

respective estates upon the death of either."

The second paragraph at issue is § 10, titled "Mutual Releases," and it provides: "This Agreement is the entire agreement of the parties. Except as to the obligations created hereunder and reservant to the parties hereto, the rights set forth in this Agreement is the entire understanding of the parties and each party hereby releases and relinquishes to the other party any and all claims that either party has against the other for any and all property rights and causes of action from any behavior or occurrence that happened during the marriage."

On the basis of the foregoing separation agreement, the defendant filed a motion for summary judgment with respect to the plaintiff's negligence action. The defendant claimed that he was entitled to judgment as a matter of law because there was no genuine issue of material fact that the separation agreement precluded the plaintiff from bringing any claim against the defendant for any behavior that happened during their marriage. The defendant attached to his motion, as exhibits, the separation agreement, the plaintiff's answers to the defendant's requests for admissions, and his own affidavit. These materials revealed that there was no dispute that the plaintiff's alleged injuries occurred during her marriage to the defendant.

The plaintiff in turn filed an objection to the motion for summary judgment. The plaintiff attached to her objection, as exhibits, excerpts from the separation agreement and her own affidavit. In her affidavit, the plaintiff claimed that it was her understanding, based on the parties' conversations between themselves and their attorneys, that the negligence action would not be covered under the separation agreement.

After reviewing the parties' submissions and the separation agreement, the court, *J. Fischer, J.*, granted summary judgment in favor of the defendant. Specifically, the court ruled that the mutual releases provision of the parties' separation agreement was clear and unambiguous and operated to foreclose the plaintiff from bringing the present negligence action against the defendant. The court noted that both parties were represented by counsel and thus were to be held accountable for the unambiguous language used within the four corners of the separation agreement. As such, and given the clarity of the agreement, the court declined to consider any extrinsic evidence regarding the parties' intent. Ultimately, the court concluded that "there [was] no genuine issue of material fact that the separation agreement preclude[d] the plaintiff from bringing the instant cause of action against the defendant." This appeal followed.

We begin our analysis with the well settled standard of review applied to a court's decision to grant a motion for summary judgment. "Our review of the trial court's

decision to grant [a] motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Citation omitted; internal quotation marks omitted.) *Rickel* v. *Komaromi*, 144 Conn. App. 775, 779–80, 73 A.3d 851 (2013).

The plaintiff asserts five claims, all of which are variations on the same theme. The essence of all of her claims is that the court erred in granting summary judgment because the separation agreement, when read in its entirety, was ambiguous as to whether her negligence action was precluded by the mutual releases provision. In particular, she contends that ambiguity exists in the agreement because the agreement did not specifically preclude her negligence action. She also argues that ambiguity exists in the agreement with respect to her negligence action because, in her view, the entire agreement arises out of a divorce action and is limited to addressing only financial and property matters. Therefore, the plaintiff argues, because her negligence action did not specifically relate to a financial or property matter, her negligence action was not covered under the mutual releases provision.

Relatedly, the plaintiff contends that the court erred by precluding her from introducing and relying on extrinsic evidence of the parties' intent with respect to the separation agreement. She contends that, even though the court had deemed the agreement clear and unambiguous, the court erroneously concluded that it could not consider extrinsic evidence that would have demonstrated that the parties did not intend for the separation agreement to encompass the negligence action. We are not persuaded by the plaintiff's claims, and we reject her attempt to import ambiguity into the separation agreement where none exists.

"Our Supreme Court has instructed that interpretation of a separation agreement incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the

parties, which is determined from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Nassra* v. *Nassra*, 139 Conn. App. 661, 667, 56 A.3d 970 (2012).

"[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 103, 84 A.3d 828 (2014).

"If contract language is definitive of the parties' intent, then the interpretation of the language becomes a question of law for the court. . . . Our review, in such a case, is plenary. . . . If, however, the language is not clear, then the intention of the parties as represented in the contract becomes a question of fact. . . . If the fact in question is genuinely material to the resolution of the issue, then it is not the proper subject of summary judgment." (Citations omitted.) *Best Friends Pet Care, Inc.* v. *Design Learned, Inc.*, 77 Conn. App. 167, 176, 823 A.2d 329 (2003). We conclude that the mutual releases provision is clear and unambiguous. As a result, our review is plenary, and in determining the intent of the parties to the agreement, it is the language of the agreement and the intent expressed therein that controls. *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 314, 948 A.2d 318 (2008).

Here, reading the language of the separation agreement, the mutual releases provision states that "each party hereby releases and relinquishes to the other party *any and all claims that either party has against the other* for any and all property rights *and causes of action from any behavior or occurrence that*

*happened during the marriage.*" (Emphasis added.) This language is not susceptible to more than one reasonable interpretation. Its scope—"any and all claims that either party has against the other"—is broad, and its subject—claims for property rights *and* causes of action from any behavior or occurrence that happened during the marriage—is well defined. This language means precisely what it says: that each party releases the other from any and all causes of action from any behavior or occurrence that happened during the marriage.

In construing the mutual releases provision of the separation agreement in this case, this court's decision in *Davis* v. *Davis*, 112 Conn. App. 56, 63–65, 962 A.2d 140 (2009), is instructive. In *Davis*, this court considered whether a mutual release provision in the parties' separation agreement precluded the plaintiff wife from bringing her negligence based claims against the defendant husband for conduct that occurred after the dissolution of the parties' marriage. Id. The provision read: "Subject to the provisions of this [a]greement, and reserving the right to pursue any action for divorce or dissolution of the parties' marriage or any breach of this [a]greement, each party has released and by this [a]greement does for himself or herself and his or her heirs, legal representatives, executors, administrators, and assigns, release and forever discharge the other of and from all cause or causes of action, claims, rights or demands whatsoever in law or in equity, which either of the parties ever had or now has against the other, including, without limitation, all claims or rights which now exist or may hereafter arise by reason of the marriage of the parties." (Internal quotation marks omitted.) Id., 63.

This court concluded "that the language of the separation agreement is clear and unambiguous." Id., 64. The court noted that "the mutual release provision in the separation agreement provide[d] that each party release[d] the other from 'all claims or rights which now exist or may hereafter arise *by reason of the marriage of the parties.*' . . . The language of the agreement clearly and unambiguously limit[ed] the mutual release to any and all claims existing at the time the separation agreement was entered and to any and all additional claims arising out of the marriage." (Citation omitted; emphasis in original.) Id. Because the conduct at issue in *Davis* occurred after the parties' divorce, however, this court ultimately concluded that the mutual releases provision did not bar the plaintiff's claims against the defendant. Id., 64–65.

The language that the parties used in the release in *Davis* is strikingly similar to the language that the parties have used in the mutual releases provision in this case. In fact, the agreement language in this case is even clearer and more straightforward than the agreement

language at issue in *Davis*. In this case, the agreement more plainly and simply states the parties' intent to release each other from any and all causes of action arising from behavior or events occurring during their marriage. Consequently, the mutual releases provision at issue in this case clearly and unambiguously limits the release to any and all claims arising from behavior or occurrences that happened during the marriage.

Unlike in *Davis*, however, the parties here do not dispute that the basis of the plaintiff's negligence action, which is the January 7, 2011 altercation, occurred during their marriage. Accordingly, the mutual releases provision precludes the plaintiff from bringing the present negligence action, as it is based on behavior that occurred during their marriage.

In reaching our conclusion, we observe, as did the court in *Overberg* v. *Lusby*, 921 F.2d 90, 91–92 (6th Cir. 1990), that "the separation agreement that [the parties] executed was [clearly] intended to tie up all loose ends and resolve all of the claims or disputes that might arise from the marriage relationship" and that "if the [plaintiff did] not intend a release of all known claims . . . she could [have] expressly reserve[d] a tort claim from the settlement and then subsequently sue[d] in tort."

Similarly, here, as in *Overberg*, the reasonable interpretation of the separation agreement is that it was intended to tie up all loose ends and to resolve any and all claims or disputes with respect to property and causes of action arising from any behavior or occurrences that happened during the parties' marriage. Both parties were represented by counsel in the drafting and execution of the separation agreement. The plaintiff chose not to reserve expressly her negligence action from the separation agreement. She cannot now escape the clear intent expressed in the mutual releases provision, namely, that she agreed to release the defendant from any and all causes of action for behavior that occurred during the marriage.[1]

Finally, we likewise reject the plaintiff's argument that the court erred by disregarding her extrinsic evidence of the parties' intent. The plaintiff contends that she was entitled to introduce and rely on such evidence under the "intent rule," regardless of whether the court deemed the agreement to be ambiguous. We disagree.

The "intent rule" was articulated by our Supreme Court in *Sims* v. *Honda Motor Co.*, 225 Conn. 401, 419, 623 A.2d 995 (1993). In *Sims*, the question before the court was the proper construction of General Statutes § 52–572e (b), specifically, whether a tortfeasor must be named specifically in a release in order to be discharged of liability thereby. Id., 405–406. Ultimately, our Supreme Court held that "[u]nder § 52–572e . . . the contracting parties' intent, not the operation of a legal rule [of contract interpretation], determines the

scope of a release." Id., 413. Accordingly, when applying § 52-572e, "[a] trial court may consider extrinsic evidence of the parties' intent regarding the scope of the release regardless of whether the court determines that the language of the release is ambiguous." Id., 419. The court reasoned that it was necessary to create a special "intent rule" of contract interpretation for § 52–572e in order to avoid frustrating the goal of that statutory provision.[2] The court observed: "By abrogating the common law rule that a release of one tortfeasor discharges, by operation of law, all joint tortfeasors, § 52–572e preserves the right of the injured party to choose to release one or all joint tortfeasors in accordance with the intent of the negotiations between the injured party and the settling tortfeasor." Id., 413.

*Sims* is factually distinct and legally inapposite to the present case. As this court noted in *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 45, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007), our Supreme Court did not intend for the rule in *Sims* to apply to all releases. In fact, "after *Sims*, our Supreme Court clarified that *Sims* should not be read as a rejection of the four corners doctrine of contract interpretation. See *Levine* v. *Massey*, 232 Conn. 272, 278 n.7, 654 A.2d 737 (1995). Instead, the court described it as a narrow exception to the general rule of contract construction that was needed to avoid frustrat[ing] the purpose of a remedial statute." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, supra, 45.

In the present case, there is no remedial statute at issue. This case also does not involve joint tortfeasors. Thus, the narrow exception to the general rules of contract construction created by *Sims* and the intent rule are simply inapplicable to this case. Accordingly, normal principles of contract interpretation apply to the court's interpretation of the separation agreement. As such, the court properly applied the oft stated principle that "[e]xtrinsic evidence may be considered in determining contractual intent only if a contract is ambiguous." (Internal quotation marks omitted.) *Orange Palladium, LLC* v. *Readey*, 144 Conn. App. 283, 297, 72 A.3d 1191 (2013). Because the court properly concluded that the separation agreement was clear and unambiguous, it properly declined to consider the plaintiff's extrinsic evidence in determining the parties' intent.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Indeed, it is worthy of note that § 11 of the separation agreement, titled "Mutual Drafting," states that "this Agreement was drafted cooperatively by the parties' counsel in consultation with the parties. Neither party shall be entitled to claim the benefit of any ambiguity from the drafting hereof."

[2] General Statutes § 52–572e (b) provides that "[a] release by the injured person, or his legal representative, of one joint tortfeasor does not discharge the other tortfeasors unless, and only to the extent, the release so provides."

Our Supreme Court stated that "the purpose of § 52–572e . . . is to permit the release of one joint tortfeasor to effect the release of other joint tortfeasors only if the settling parties so intended." *Sims* v. *Honda Motor Co.*, supra, 225 Conn. 414.

———————————————