******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

PAUL DISPAZIO ET AL. *v.* EUGENE
PACAPELLI ET AL.
(AC 47007)

Elgo, Westbrook and Bear, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment for the defendants, rendered following its granting of the defendants' motion for summary judgment, and from the trial court's order granting the defendants' motion for sanctions pursuant to the rule of practice (§ 1-25). The plaintiffs claimed, inter alia, that the court improperly concluded that a release of liability that they had executed in connection with prior litigation precluded the present action. *Held*:

The trial court appropriately rendered summary judgment for the defendants because it properly determined that there were no genuine issues of material fact and that the release barred the plaintiffs' claims against the defendants as a matter of law, as the claims were inchoate claims that were contemplated at the time of the release, although they may not have manifested themselves at that time.

The trial court's award of attorney's fees to the defendants as a sanction pursuant to Practice Book § 1-25 was not improper because the plaintiffs' claims were without a basis in law and fact, as they were barred under the clear and unambiguous terms of the release, and the award, made pursuant to § 1-25, did not require the court to find that the plaintiffs had acted in bad faith.

Argued January 8—officially released March 25, 2025

*Procedural History*

Action to recover damages for, inter alia, intentional misrepresentation, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Abrams, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon; thereafter, the court, *Abrams, J.*, granted the defendants' motion for sanctions, and the plaintiffs appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellants (plaintiffs).

*Timothy M. Gondek*, for the appellees (defendants).

*Opinion*

WESTBROOK, J. The plaintiffs, Paul DiSpazio and Maltby Street, LLC (Maltby Street), appeal from the trial court's rendering of summary judgment in favor of the defendants, Eugene Pacapelli and other officers and members of the board of directors of West Cove Marina Coop, Inc. (West Cove),[1] and from its granting of the defendants' motion for sanctions. The plaintiffs claim that the court improperly granted (1) the defendants' motion for summary judgment because a release of liability entered into by the plaintiffs for the benefit of West Cove in connection with prior litigation (2015 release) did not preclude the present action; and (2) the defendants' motion for sanctions because the plaintiffs' claims were not without basis in law or fact and the court did not make a requisite finding of bad faith. We disagree and, accordingly, affirm the judgment of the court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal. West Cove is a cooperative association and Maltby Street is a former dock unit owner in the association. In 2013, West Cove brought an action against Maltby Street seeking, inter alia, to foreclose on a statutory lien that West Cove held in accordance with General Statutes (Rev. to 2013) § 47-258 on property located at 13 Kimberly Avenue in West Haven (prior action). See *West Cove Marina Coop, Inc.* v. *Maltby Street, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-13-6038624-S. Maltby Street filed a counterclaim against West Cove. In January, 2014, West Cove sold the property located at 13 Kimberly Avenue to The City Point Yacht Club, Inc. In 2015, West Cove and Maltby Street

---

[1] The other defendants are Cynthia Nicoletti, an officer and/or director of West Cove; Rogers Conant, the president of West Cove; Edward Hyland, an officer or director of West Cove; and Charles Ambrogio, an officer and/or director of West Cove.

resolved the litigation by way of a settlement agreement.

On July 2, 2015, as part of the settlement agreement, the plaintiffs executed the 2015 release. The 2015 release provided that the releasors included the plaintiffs and that the releasees included "West Cove . . . and [its] officers, directors, shareholders, agents, and legal representatives . . . ." It further provided that the plaintiffs, in exchange for $38,000, agreed to "remise, release and forever discharge the said [r]eleasee[s] of and from all . . . causes of actions . . . which against the said [r]eleasee[s], the [r]eleasor[s] ever had, now ha[ve] or hereafter can, shall, or may have, including but not limited to . . . any and all claims arising out of or relating to the [r]eleasee[s'] approval, authority, decision to sell, and sale of the property known as 13 Kimberly Avenue . . . to The City Point Yacht Club, Inc. . . . in accordance with a purchase and sale agreement between the parties dated January 31, 2014 . . . including . . . any claim of lack of authority of the [r]eleasee[s] to receive the proceeds of the sale and hold or disburse those proceeds as the [a]ssociation determines is necessary and appropriate . . . ."

The plaintiffs commenced the present action in December, 2019. In the complaint, the plaintiffs asserted four counts alleging intentional misrepresentation, negligent misrepresentation, statutory theft in violation of General Statutes § 52-564,[2] and conversion. Each count was premised on the following allegations. The plaintiffs, holding membership and/or ownership interests in West Cove, "made several requests to the defendants to provide them [with] an accounting and a synopsis of West Cove's records so that they could

---

[2] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

understand a certain distribution of assets and proceeds" resulting from the sale of 13 Kimberly Avenue, which was "done and authorized by the defendants." When West Cove sold 13 Kimberly Avenue, "the proceeds were not properly distributed." Despite the plaintiffs' requests, "[t]he defendants individually and personally have taken steps to conceal their activities relating to the distribution . . . and have refused to fully explain or to account for the assets in question and/or the proceeds from the disbursement and/or sale of the assets." "The defendants personally deceived the plaintiffs and provided scant details, little to no accounting and made misleading statements and representations regarding this transaction to the plaintiffs."

On April 14, 2021, the defendants filed an answer and special defenses in which they claimed, inter alia, that the plaintiffs' claims against the defendants were barred by the doctrines of collateral estoppel and res judicata.

On July 12, 2022, the defendants moved for summary judgment on the complaint in its entirety. The defendants argued, inter alia, that the 2015 release precluded the plaintiffs from bringing the present action. On March 30, 2023, following oral argument on the defendants' motion for summary judgment, the court, *Abrams*, *J.*, issued an order granting the motion. In its order, the court stated: "Upon review of the [2015 release], it is abundantly clear to the court that no genuine issue exists regarding the fact that it encompasses the plaintiffs' claims in their entirety. To find otherwise would run counter to the public policy supporting parties resolving their disputes through releases of claims. The plaintiffs' arguments that the claims were not released are conclusory at best. The court feels compelled to add that it considers the filing of this lawsuit in the face of the existence [of] the [2015] release to have tenuous ethical support." The court

thereafter rendered summary judgment in favor of the defendants on the complaint in its entirety.

On May 3, 2023, the defendants, pursuant to Practice Book § 1-25,[3] filed a motion for sanctions, requesting that the court order the plaintiffs to pay the defendants' attorney's fees and costs. The defendants argued, inter alia, that no good faith basis existed for the plaintiffs' commencement of the present action and that the defendants were forced to expend considerable time and money defending the claims. On August 21, 2023, after a hearing on the defendants' motion for sanctions, the court issued an order granting the motion. In its order, the court stated: "The court hereby concludes that the underlying action was brought 'without basis in law and fact' and orders the plaintiff[s] to pay the defendant[s] the requested sum of $16,548. Practice Book § 1-25." This appeal followed.

I

The plaintiffs first claim that the court improperly granted the defendants' motion for summary judgment because the 2015 release did not preclude the present action. Specifically, the plaintiffs argue that they did not release the present claims against the defendants because their claims arise out of their shareholder interests in West Cove, not the sale of 13 Kimberly Avenue. They further argue that they did not release the claims at issue because, at some point "[a]fter the resolution

---

[3] Practice Book § 1-25 provides in relevant part: "(a) No party or attorney shall bring or defend an action, or assert or oppose a claim or contention, unless there is a basis in law and fact for doing so that is not frivolous. . . .

"(b) . . . [T]he judicial authority, solely on its own motion and after a hearing, may impose sanctions for actions that include . . . [f]iling of pleadings, motions, objections, requests or other documents that violate subsection (a) . . . .

"(c) The judicial authority may impose sanctions including, but not limited to, fines pursuant to General Statutes § 51-84; orders requiring the offending party to pay costs and expenses, including attorney's fees; and orders restricting the filing of papers with the court."

of the prior action, [the plaintiffs] became aware that the defendants were in the process of liquidating West Cove" and, therefore, their shareholder interests in the dissolution of West Cove had not yet accrued when the 2015 release was executed.[4] We disagree.

As a preliminary matter, we note the well established standard that governs our review of a trial court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment

[4] The plaintiffs additionally argue that, pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 812, 626 A.2d 729 (1993) (*Audubon*) (court properly summarily enforced release agreement executed in midst of litigation), and *Matos* v. *Ortiz*, 166 Conn. App. 775, 797–98, 144 A.3d 425 (2016) (court improperly summarily enforced release agreement executed prior to commencement of litigation because claims had not yet fully accrued at time of execution), the court was not authorized to summarily enforce the 2015 release in the present matter. In *Matos*, this court explained that "[w]e have never extended *Audubon* to agreements that, when made, remained wholly outside the court's domain because no one had yet invoked the court's jurisdiction through service of a summons and complaint. That initial invocation of the court's authority distinguishes an agreement to settle litigation—which may be summarily enforced by [an] *Audubon* motion—from a preemptive release of claims— which may be enforced through a motion for summary judgment or by presentation at trial as a special defense." Id., 808. In the present matter, the defendants did not file an *Audubon* motion. Rather, they filed a motion for summary judgment in which they argued that the plaintiffs' claims were barred by the terms of the 2015 release. Accordingly, *Audubon* and *Matos* have no bearing on whether the court properly granted the defendants' motion for summary judgment in this case.

fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Waterbury* v. *Brennan*, 228 Conn. App. 206, 212, 325 A.3d 237, cert. denied, 350 Conn. 923, 325 A.3d 1094 (2024).

The following additional principles guide our review of whether the 2015 release barred the plaintiffs' claims against the defendants. "A release agreement is a contract. It is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts. . . . A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the

intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Dunn* v. *Etzel*, 166 Conn. App. 386, 392–93, 141 A.3d 990 (2016).

The plaintiffs first argue that their present claims arise out of their shareholder interests in the disbursement of West Cove's assets and proceeds rather than out of the sale of 13 Kimberly Avenue and, therefore, the 2015 release did not release their claims.[5] We disagree.

The 2015 release provided that the plaintiffs agreed to "release . . . any and all claims *arising out of or relating to*" the sale of 13 Kimberly Avenue, including claims related to the releasees' authority to receive, hold, or disburse the proceeds of that sale. (Emphasis added.) The language of the [2015] release is clear and unambiguous. There is no genuine dispute of material fact that the defendants are releasees under the 2015 release.[6] The record does not support the plaintiffs'

---

[5] The plaintiffs rely on *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 281, 422 A.2d 311 (1979) (issue was "whether the trial court was correct in sustaining the defendants' motion for summary judgment . . . on the ground that . . . derivative claims . . . could only be brought by one who, unlike the plaintiff, was a shareholder of [an entity] acting on behalf of [that entity] at the time of suit"), to support their argument that they had a right to bring claims against the defendants based on their shareholder rights. The court in the present matter, however, granted summary judgment on the ground that the 2015 release precluded the plaintiffs' claims. Whether the plaintiffs could maintain derivative claims against the defendants is not at issue on appeal, and *Yanow* is therefore inapplicable.

[6] Although, in response to the defendants' requests for admissions, the plaintiffs denied that "the defendants are among the releasees of the 2015 release," they admit that the defendants are "officers, directors, shareholders, agents or legal representatives of West Cove" and that the 2015 release

argument that their claims against the defendants are unrelated to the sale of 13 Kimberly Avenue and the defendants' authority to disburse the proceeds from that sale. Although the plaintiffs' claims concern their shareholder interests in the disbursement of West Cove's assets and proceeds, the only asset at issue is 13 Kimberly Avenue and the only proceeds at issue are those generated by the sale of that property. Thus, the plaintiffs' claims against the defendants directly originated from the sale of 13 Kimberly Avenue and the disbursement of those proceeds.

The plaintiffs further argue that their shareholder interests concerning the dissolution of West Cove had not yet accrued when the 2015 release was executed because the plaintiffs did not become aware that West Cove was liquidating until after the resolution of the prior action. Therefore, the plaintiffs argue that they did not release the present claims in the execution of the 2015 release. The defendants, on the other hand, contend that "[t]here are no causes of action or factual allegations within the complaint which seek damages related to an alleged 'dissolution' of West Cove as an entity." The defendants further argue that the plaintiffs' claims were "specifically contemplated by the [2015] release and, as such, cannot be held to have been unknown at the time of its execution." We agree with the defendants.

Our Supreme Court has stated that, "[e]xcept in very rare instances, the settlement and release of a claim does not cover claims based on events that have not yet occurred. . . . The usual general release, then, is not ordinarily construed to include in its coverage claims based upon occurrences which have their beginning after the instrument is executed. . . . For that

---

lists " 'West Cove . . . and their officers, directors, shareholders, agents, and legal representatives' " as releasees. Accordingly, the plaintiffs necessarily admit that the defendants are releasees.

reason, language covering future claims and unknown claims in releases is ordinarily construed to cover only inchoate claims that are in being at the time of release but which have not yet manifested themselves." (Citations omitted; internal quotation marks omitted.) *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 481–82, 650 A.2d 1240 (1994). A claim is "much more analogous to an inchoate [claim] that [is] in being at the time of release but which [has] not yet manifested [itself] than it is to [an] unforeseeable subsequent injury . . . [when the] consequence was likely within the contemplation of the parties when they agreed to bar all claims . . . ." (Citation omitted; internal quotation marks omitted.) *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 29, 682 A.2d 99 (1996).

Here, the plain language of the 2015 release clearly precluded subsequent claims, as it expressly provides that the plaintiffs released all causes of action that they "ever had . . . *or hereafter can, shall, or may have*" against the defendants related to the sale of 13 Kimberly Avenue. (Emphasis added.) The plain language also clearly precluded the claims at issue because it included "any claim of lack of authority of the [r]eleasee[s] to . . . *hold or disburse those proceeds*" from the sale. (Emphasis added.) The plaintiffs maintain that this unambiguous language did not release their rights as *shareholders* to pursue claims related to the disbursement of proceeds from the sale. At the time that the plaintiffs executed the 2015 release, however, they were aware that they held shareholder interests in West Cove, that West Cove had sold 13 Kimberly Avenue, and that West Cove would likely disburse the proceeds from that sale. Yet the 2015 release contained no exceptions or provisions intended to preserve the plaintiffs' claims against the defendants relating to their shareholder interests in the disbursement of the proceeds. In fact,

the 2015 release expressly precluded such claims. Consequently, the claims at issue concerning the disbursement of proceeds from the sale of 13 Kimberly Avenue constitute inchoate claims that were contemplated at the time of release although they may not have manifested themselves at that time.

Furthermore, whether West Cove's alleged dissolution began after the execution of the 2015 release is irrelevant because the plaintiffs, in their complaint, make no claims or allegations relating to the dissolution or liquidation of West Cove. Rather, the plaintiffs' claims are premised solely on allegations that the defendants improperly disbursed proceeds from the sale of 13 Kimberly Avenue and failed to fully account to the plaintiffs on the disbursement. The sale of 13 Kimberly Avenue took place *before* the plaintiffs executed the 2015 release, and the disbursement of the proceeds generated from that sale was clearly contemplated at the time that the plaintiffs released all claims related to the sale. Thus, we agree with the trial court that there are no genuine issues of material fact and the 2015 release barred the plaintiffs' claims against the defendants as a matter of law. Summary judgment was therefore appropriate.

## II

The plaintiffs additionally claim that the court improperly granted the defendants' motion for sanctions because (1) their claims were not without basis in law and fact;[7] and (2) the court did not make a requisite finding of bad faith. We are not persuaded.

[7] The plaintiffs argue that the court improperly awarded sanctions to the defendants because they had probable cause to bring the action. In support of their argument that the court could not award sanctions if the plaintiffs had probable cause, the plaintiffs state that "[t]he trial court appears to order attorney's fees pursuant to Practice Book § 10-5 and [General Statutes] § 52-99." Practice Book § 10-5 and § 52-99 permit the court to order the payment of expenses if a party made allegations or denials "without reasonable cause . . . ." The court in the present matter, however, expressly awarded sanctions pursuant to Practice Book § 1-25. Because Practice Book

"[W]e review the trial court's granting of a motion for sanctions and attorney's fees for an abuse of discretion. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . .

"Pursuant to Practice Book § 1-25, the trial court has the authority to impose sanctions and award attorney's fees where a party files a document that violates § 1-25 (a), which provides in relevant part that [n]o party . . . shall bring . . . an action . . . unless there is a basis in law and fact for doing so that is not frivolous." (Citation omitted; internal quotation marks omitted.) *M. B.* v. *S. A.*, 194 Conn. App. 721, 726, 222 A.3d 559 (2019).

The plaintiffs argue that their claims had a basis in law and fact because they did not release the claims at issue in this case. We have concluded in part I of this opinion, however, that the 2015 release clearly precluded their claims and have therefore rejected the predicate for the plaintiffs' argument in this regard. When the court granted the defendants' motions for summary judgment and sanctions, it considered the 2015 release and, in the context of Practice Book § 1-25, found that the plaintiffs' claims against the defendants were without a basis in law and fact and had "tenuous ethical support" because those claims were barred under the clear and unambiguous terms of the 2015 release. Accordingly, the court did not abuse its discretion in granting the defendants' motion for sanctions

§ 1-25 authorizes the court to impose sanctions when a party brings an action without basis in law and fact, we construe the plaintiffs' probable cause argument as an argument that their action had a basis in law and fact.

against the plaintiffs and ordering them to pay attorney's fees to the defendants pursuant to § 1-25 for filing a frivolous action.

The plaintiffs nevertheless argue that the court improperly awarded attorney's fees to the defendants because it failed to make a finding that the plaintiffs had acted in bad faith in pursuing the present action against the defendants. We disagree.

Our Supreme Court has explained that trial courts have two sources of authority to impose sanctions. "One source of the trial court's authority to impose sanctions is the court's inherent power. We have long recognized that, apart from a specific rule of practice authorizing a sanction, the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules. . . . In addition, our rules of practice, adopted by the judges of the Superior Court in the exercise of their inherent rule-making authority . . . also [provide] for specific instances in which a trial court may impose sanctions." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 9–10, 776 A.2d 1115 (2001).

If a trial court invokes its *inherent authority* to impose sanctions, "Connecticut . . . prohibits the award of such fees to the prevailing party unless such award is premised on statutory directives or is pursuant to contract. An exception to this doctrine may be successfully invoked if the losing party has acted in bad faith and/or vexatiously or wantonly acted for oppressive reasons." (Internal quotation marks omitted.) *Jacques* v. *Jacques*, 223 Conn. App. 501, 507, 309 A.3d 372 (2024). "[I]n order to impose sanctions under the bad faith exception, the trial court must find both that the litigant's claims were entirely without color and that the litigant acted in bad faith. . . . The court must

make these findings with a high degree of specificity . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 511.

In the present matter, the court did *not* exercise its inherent authority to impose sanctions to compel the observance of its rules. Rather, the court awarded sanctions pursuant to Practice Book § 1-25, which expressly permits the court to "impose sanctions including, but not limited to . . . orders requiring the offending party to pay costs and expenses, *including attorney's fees* . . . ." (Emphasis added.) Practice Book § 1-25 (c). Thus, because the court awarded attorney's fees pursuant to our rules of practice, the court was not required to make a finding that the plaintiffs acted in bad faith.

The judgment is affirmed.

In this opinion the other judges concurred.